IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PAIGE CASEY,<br><br>    Plaintiff,<br><br>v.<br><br>MINUTE CLINIC DIAGNOSTIC OF VIRGINIA, LLC, *et al.*<br><br>    Defendants. | Case No. 1:22-cv-01127-TSE-WEF |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, OR ALTERNATIVELY TO STAY, AND TO COMPEL ARBITRATION**

I.  **PRELIMINARY STATEMENT**

This action arises out of the former employment of plaintiff Paige Casey as a nurse practitioner for MinuteClinic® in Virginia. Plaintiff has asserted a claim of wrongful discharge of her employment allegedly in violation of the Virginia Conscience Clause. However, in September 2018, at the time of her initial hiring, plaintiff and MinuteClinic voluntarily entered into a mutual agreement to arbitrate all employment related claims. This Arbitration Agreement, expressly governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, requires the parties to adjudicate all claims "arising out of or related to" her employment at MinuteClinic in binding arbitration administered by the American Arbitration Association. Plaintiff reviewed the Arbitration Agreement electronically on or about September 5, 2018 in a password-protected onboarding portal (called "StarSource"); clicked that she was assenting to the Arbitration Agreement; failed to "opt out" of the Arbitration program despite being given an additional 30 days to do so; and continued working for MinuteClinic thereafter. Based on this reasonable,

-1-

voluntary process for entering into a contract to arbitrate employment-related claims, plaintiff and MinuteClinic formed an Arbitration Agreement. Because this Agreement requires all employment-related claims to be resolved through arbitration, the Court should dismiss or stay this action and compel plaintiff to arbitrate her claims.

## II.     FACTUAL BACKGROUND

### A.     The Arbitration Agreement Between Plaintiff and MinuteClinic

According to her Complaint, plaintiff was hired by MinuteClinic as a nurse practitioner and commenced her employment on or about September 4, 2018. *See* Compl. ¶¶ 13-15, ECF No. 1-3.

MinuteClinic utilizes the "StarSource" Onboarding system for new hires to review and complete pre-hire forms at the time of commencement of their employment. *See* Declaration of Maria Burke ("Burke Decl.") ¶ 2, attached hereto as Ex. A. In order to review and sign employment-related forms, new hires log into the StarSource Onboarding portal using their own unique credentials and personalized password, and the individual is directed to a "My Tasks" page where he or she is required to review and complete various pre-hire forms. Burke Decl. ¶¶ 3-4, Exs. 1-2. One such "Task" requires the new hire to "Sign MC [MinuteClinic] Arbitration Agreement." *Id.* ¶ 5, Ex. 3. The "Sign MC Arbitration Agreement" task is not marked as "completed" until the employee reviews and acknowledges the document.

Upon clicking on the Arbitration Agreement, the employee is directed to a page that states: "The completion of this task requires the signature of the employee. Please use the space below to draw your signature or upload an image file of your signature . . . ." *Id.* ¶ 6, Ex. 4. The employee advances to the next page in order to view the Arbitration Agreement. In order to fully review the Agreement, the employee must scroll to the bottom and check a box stating: "By

checking this box, I agree that I have reviewed this document and my electronic signature will be applied as my acknowledgement of receipt of this form." After checking this box, the employee must hit one of two buttons: "Save and Finish Later" or "Submit." Burke Decl. ¶ 7, Ex. 5. If the employee clicks "Save and Finish Later," the document will show as "pending" in StarSource. If, however, the employee clicks "Submit," the electronic signature that was created is automatically populated in the Arbitration Agreement form, and the date the form was completed is also captured. As well, the Arbitration Agreement "task" in the status column of the StarSource "My Tasks" page is automatically changed to "completed." *Id.* ¶ 8.

Here, plaintiff clicked "Submit" and assented to the Arbitration Agreement.[1] The specific screens in StarSource indicate that she completed the "Sign MC Arbitration Agreement" task on September 5, 2018. *Id.* ¶ 10, Ex. 7 [screen shots of Paige Cantfil StarSource account]. Additionally, the status column on her My Tasks page indicates that she "completed" the "Sign MC Arbitration Agreement" task on September 5, 2018 (along with various other tasks). *Id.* at Ex. 8. The only way for the "Sign MC Arbitration Agreement" task to have been marked as "completed" within StarSource was if Paige Cantfil: (1) clicked through and reviewed the Arbitration Agreement; (2) checked the box acknowledging that she reviewed the Arbitration Agreement; and (3) clicked "Submit." The fact that the Arbitration Agreement task is listed as "completed" on September 5, 2018 indicates that she performed these tasks with the intent to apply her electronic signature.

---

[1] When a form that requires a signature, such as the Arbitration Agreement, is added to the StarSource system, the Signature and Date "fields" on the form must be properly mapped or configured in the system in order to link the electronic signature and current date to the appropriate fields. Unfortunately, in September 2018, when the "Sign MC Arbitration Agreement" task was completed by Paige Casey (then known as Paige Cantfil), the Name field was properly mapped on the MinuteClinic Arbitration Agreement, but the <u>Signature</u> and <u>Date</u> fields were not properly mapped. As a result, both the electronic signature and date that should have linked/populated on the form when Ms. Cantfil clicked "Submit" were not captured, and thus, the Signature and Date on her Arbitration Agreement were not displayed; rather, only her Name was captured. Burke Decl. ¶ 9, Ex. 6.

The Arbitration Agreement between plaintiff and MinuteClinic states, in pertinent part:

1. **Mutual Agreement to Arbitrate Claims.** The employee named below will be referred to here as "Employee," "You" or "Your". MinuteClinic including its affiliates, successors, subsidiaries and/or parent companies will be referred to here as "MinuteClinic" or "Company". Under this Agreement, inclusive of MinuteClinic, LLC on behalf of itself and its subsidiaries and all of its employees and between each entity managed by MinuteClinic, You and MinuteClinic agree that any dispute between You and MinuteClinic that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.

2. **Claims Covered by this Agreement.** Except as otherwise stated in this Agreement, Covered Claims are any and all claims, disputes or controversies that MinuteClinic may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against MinuteClinic, its parents, subsidiaries, successors or affiliates, owners or one of its employees or agents, arising out of or related to the Employee's employment with MinuteClinic or the termination of the Employee's employment. Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA") (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by ERSA or funded by insurance), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement, except as provided in the section below regarding the Class Action Waiver.

*See* Declaration of Thomas Schofield ("Schofield Decl.") ¶¶ 4-5, Ex. 1, attached hereto as Ex. B.

The Arbitration Agreement also provided plaintiff with the opportunity to opt out of arbitration without fear of retaliation. Specifically, the Arbitration Agreement provides, in relevant part:

    7.    **Your Right to Opt Out of Arbitration.** Arbitration is not a mandatory condition of Your employment at MinuteClinic. If You wish, You can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, You must mail a written, signed and dated letter stating clearly that You wish to opt out of this Agreement to MinuteClinic c/o CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, Your opt out notice must be postmarked no later than 30 days after the date you agree to the Agreement below.

    \* \* \*

    8.f.    **Non-Retaliation.** It is against MinuteClinic Agreement for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement or to challenge this Agreement. If an Employee believes that he or she has been retaliated against, the Employee should immediately report the issue to the MinuteClinic Human Resources Department or Ethics Line. This Agreement does not in any way alter the at-will employment status between Employees and MinuteClinic.

Schofield Decl. ¶ 6, Ex. 1. Plaintiff did not opt out of the Arbitration Agreement. Schofield Decl. ¶¶ 7-8.

    **B.**    **Plaintiff's Employment Claims Against CVS**

Despite agreeing to arbitration, plaintiff filed her Complaint in the Circuit Court for Prince William County, Virginia on August 31, 2022. *See* Compl. Plaintiff alleges that she was wrongfully terminated from her employment effective April 1, 2022 "solely because of her religious beliefs prohibiting provision of abortion-causing drugs," allegedly in violation of the Virginia Conscience Clause, Va. Code § 18.2-75. *See* Compl. ¶¶ 36-45. This claim clearly arises out of plaintiff's employment with MinuteClinic and, therefore, falls within the scope of the parties' Arbitration Agreement. Defendants now move to dismiss or stay and to compel arbitration.

### III. ARGUMENT

The Court should order Ms. Casey to arbitrate her claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, because she entered into an enforceable Arbitration Agreement, expressly waiving her right to pursue the claims in court that she asserts herein.

#### A. The Federal Arbitration Act Mandates Enforcement of Arbitration Agreements in the Employment Context

Under the Federal Arbitration Act (FAA), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was enacted by Congress to reverse decades of judicial hostility toward arbitration agreements. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-627 (1985); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987). The FAA establishes a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Indeed, the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility*, 563 U.S. at 344; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("courts and arbitrators must give effect to the [parties'] contractual rights and expectations" in arbitration agreements)(brackets in original).

Guided by the FAA, the United States Supreme Court has repeatedly held that arbitration agreements are to be read liberally to effectuate their purpose. *Moses H. Cone*, 460 U.S. at 25; *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000). Indeed, the FAA requires courts to "rigorously . . . enforce arbitration agreements according to their terms." *Epic Systems*,

138 S. Ct. at 1621 (quoting *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)); *accord Mitsubishi Motors Corp.*, 473 U.S. at 626; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Moreover, because arbitration is a highly favored means of settling disputes, the Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. A court may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

In applying the foregoing principles, the Supreme Court has held that the FAA applies to agreements to arbitrate statutory employment-related claims. In the employment context, the Supreme Court reiterated the strong public policy in favor of arbitration:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context . . . . The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees special protection against discrimination prohibited by federal law . . . ."

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001); *accord Gilmer*, 500 U.S. 20 (1991) (ADEA claim was subject to compulsory arbitration). Indeed, the Fourth Circuit has consistently held that arbitration agreements requiring the arbitration of employment-related disputes are fully enforceable. *See, e.g.*, *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005); *Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998). In short, under the FAA, arbitration agreements in the employment context are enforceable.

Here, the Arbitration Agreement at issue is indisputably governed by the FAA. *See* Schofield Decl. Ex. 1 at ¶ 8d ("This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce").

### B. The Parties' Arbitration Agreement Is Valid and Must be Enforced Under the FAA

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. Indeed, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989). In determining whether to compel arbitration under the FAA, only two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Both requirements are plainly satisfied in this case. Here, however, the Arbitration Agreement delegates even these gateway issues to the arbitrator and not the Court. Accordingly, the Arbitration Agreement must be enforced.

#### 1. Plaintiff and CVS Agreed to Arbitrate Employment-Related Claims

Under the FAA, state law principles regarding contract formation determine whether the parties agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998). "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Peoples Security*, 867 F.2d at 813 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626). In applying state law, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

Specifically, courts look to the relevant state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Kaplan*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). "Under Virginia law, offer, acceptance and consideration must exist to form a valid contract." *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 696 (E.D. Va. 2020) (citing *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 457 S.E.2d 36, 39 (1995)); *accord Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 269 S.E.2d 838, 844 (1980); *Lester v. TMG, Inc.*, 896 F. Supp. 2d 482, 485 (E.D. Va. 2012). Further, "mutuality of assent . . . is an essential element of all contracts." *Lacey v. Cardwell*, 216 Va. 212, 217 S.E.2d 835, 843 (1975) (quoting *Green's Ex'rs v. Smith*, 146 Va. 442, 131 S.E. 846, 848 (1926) ("It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts, and, in order that this mutuality may exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other")). A court should use an objective standard to determine whether a party assented to the terms of a contract, including the assenting "words or acts, not . . . [the party's] unexpressed state of mind." *Phillips v. Mazyck*, 273 Va. 630, 643 S.E.2d 172, 175-76 (2007) (citing *Wells v. Weston*, 229 Va. 72, 326 S.E.2d 672, 676 (1985)). Finally, a contract is no less a contract simply because it is entered into it electronically on a computer. *See Melo*, 439 F. Supp. 3d at 696 (citing *A. V. v. iParadigms, Ltd. Liability Co.*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008), *aff'd in part, rev'd in part on other grounds*, 562 F.3d 630 (4th Cir. 2009)).

The elements of offer, acceptance, and mutual assent are easily satisfied here. MinuteClinic made an offer to plaintiff to enter into an Arbitration Agreement by requiring her to complete the "Sign MC Arbitration Agreement" task in the StarSource Onboarding portal.

Plaintiff accepted that offer by reviewing and acknowledging the Arbitration Agreement; by clicking on a box that stated, "By checking this box, I agree that I have reviewed this document and my electronic signature will be applied as my acknowledgement of receipt of this form;" and then clicking "Submit," which "completed" the task and communicated her assent to the Agreement.[2] *See* Burke Decl. ¶¶ 2-11.

It is by now well settled that parties can assent to contracts electronically through online clicks and other electronic methods. *See Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 260 (4th Cir. 2021) ("In some cases, an 'electronic click' can suffice to signify the acceptance of a contract"); *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 531-32 (5th Cir. 2020) (employee assented to restrictive covenant provisions contained in stock grant agreement by clicking on and accepting documents on website); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts around the country have recognized that an electronic 'click' can suffice to signify the acceptance of a contract. . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement") (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016)); *accord Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 8-10 (1st Cir. 2021); *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156-58 (D.C. Cir. 2021); *Hosseini v. Upstart Network, Inc.*, Case No. 19-cv-704, 2020 WL 573126, at *4-5 (E.D. Va. Feb. 5, 2020) (Ellis, J.).

When faced with electronic or e-commerce contracts, courts routinely rely on affidavits from parties that describe and attach "screenshots" of what "would have appeared on a user's screen," in order to prove assent to the agreement. *See Melo*, 439 F. Supp. 3d at 694 (relying on

---

[2] This action of clicking "Submit" would normally have caused plaintiff's electronic signature and the date to be affixed to the Agreement, but due to a system glitch, the Signature and Date fields were not properly "mapped" in the MinuteClinic Arbitration Agreement, as a result of which the signature and date fields failed to populate the signature or the date she completed the "Sign MC Arbitration Agreement" task. Burke Decl. ¶ 9.

screenshots and a declaration stating that Uber maintained records from which the company could see what a user had seen and done) (citing *Meyer*, 868 F.3d at 70-72; *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988-989 (N.D. Cal. 2017) (relying on testimony about what a prospective user would have seen and had to do to create an account); *and Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-35 (S.D.N.Y 2012) (allowing declarations with testimony and screenshots of what user did and would have seen)). Here, through the Declaration of Maria Burke, Defendants have proven what "would have appeared" on Casey's screen when she was clicking through the "Sign MC Arbitration Agreement" task in the StarSource Onboarding portal, and Ms. Burke attached both illustrative screenshots of what plaintiff would have "seen and done" as well as actual screenshots proving that Ms. Casey "completed" that task.

Further, the Arbitration Agreement stated that plaintiff could "opt out" of the arbitration program by mailing an opt-out letter to a MinuteClinic post office box within 30 days:

> **Your Right to Opt Out of Arbitration**. Arbitration is not a mandatory condition of Your employment at MinuteClinic. If You wish, You can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, You must mail a written, signed and dated letter stating clearly that You wish to opt out of this Agreement to MinuteClinic c/o CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, Your opt out notice must be postmarked no later than 30 days after the date you agree to the Agreement below.

*See* Schofield Decl. Ex. 1 at ¶ 7. Here, however, plaintiff failed to mail an opt-out letter (Schofield Decl. ¶¶ 7-8), further manifesting her assent to the Arbitration Agreement. *See, e.g.*, *Boerstler v. UHS of Delaware, Inc.*, No. 1:21-cv-2334, 2022 WL 18802, at *4 (D.S.C. Jan. 3, 2022) (plaintiff's failure to submit opt-out notice proved assent to arbitration agreement); *Hawthorne v. B.J.'s Wholesale Club*, No. 3:15-cv-572, 2016 WL 4500867, at *6 (E.D. Va. Aug. 26, 2016) (30-day opt-out procedure rendered arbitration agreement reasonable).

Finally, the Arbitration Agreement indicates that the parties' *mutual* agreement to arbitrate employment disputes constituted valid consideration flowing both ways. *See* Schofield Decl. Ex. 1 at ¶ 8a ("**Adequate Consideration**. Both parties agree that the promises made in this Agreement by You and by MinuteClinic to arbitrate disputes, rather than litigate them before courts or other bodies, provide good and sufficient consideration for each other"). Indeed, it is well settled that when an employer and employee *mutually* agree to arbitrate disputes, there is sufficient consideration for each other's promises. *See Johnson*, 148 F.3d at 378-79; *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002).

In short, plaintiff and MinuteClinic formed a binding agreement to arbitrate all employment related legal disputes, including a dispute (such as the one here) relating to the termination of employment. As such, this action must be dismissed or stayed and plaintiff must be compelled to arbitrate her claims.

### 2. The Remaining Gateway Issues Are Delegated to the Arbitrator

Parties to an arbitration agreement may also agree to arbitrate certain "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). However, "whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019). As long as the agreement "clearly and unmistakably" gives the arbitrator the power to determine what disputes the parties agreed to arbitrate, then the issue of arbitrability has been delegated to the arbitrator. *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329

(4th Cir. 1999) (quoting *AT&T Technologies, Inc.*, 475 U.S. at 649); *see also Rent-A-Center*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Here, the Arbitration Agreement contains a delegation clause delegating issues of arbitrability to the arbitrator. In the definition of "Covered Claims," the Agreement states that plaintiff and MinuteClinic agree to arbitrate any employment claim referred to therein, which is expressly defined to include "disputes arising out of or relating to the ***validity***, ***enforceability*** or ***breach*** of this Agreement . . . ." Schofield Decl. Ex. 1 at ¶ 2 (emphasis added). Courts have consistently found "clear and unmistakable" delegation from similar language, thereby requiring any challenge to enforceability or scope of arbitration to be decided by the arbitrator. *See Rent-A-Center*, 561 U.S. at 66 (provision stating that arbitrator "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" was valid delegation clause); *Hengle v. Treppa*, 19 F.4th 324, 335 (4th Cir. 2021) (provision stating that all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, "the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision" would be subject to arbitration, was "clearly" a delegation clause), *cert. dismissed*, 142 S. Ct. 2093 (2022); *Buckmire v. LaserShip, Inc.*, No. 1:20-cv-01493, 2022 WL 4585523, at *10 (E.D. Va. Sept. 29, 2022) (provision stating that arbitrator "shall decide all issues arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of this Arbitration Provision or any portion of it, . . . clearly and unmistakably delegates arbitrability issues to an arbitrator").

Further confirming the parties' intent to delegate issues of arbitrability to the arbitrator is the Arbitration Agreement's express incorporation of the AAA's Employment Arbitration Rules and Mediation Procedures ("AAA Employment Rules"). *See* Schofield Decl. Ex. 1 at ¶ 4c. Section 4c ("**Rules and Procedures**") of the Agreement provides, in relevant part:

> The arbitration will be administered by the American Arbitration Association ("AAA") and will be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the AAA ("AAA Rules") then in effect. The AAA Rules can be found at the AAA website (www.adr.org), by calling the AAA at 800-778-7879, or by requesting a copy in writing from the MinuteClinic Senior Director, Human Resources Department.

*Id*. Rule 6(a) of the current AAA Employment Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with regard to the existence, scope, or validity of the arbitration agreement."[3]

It is well settled that "the express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *See Petrofac, Inc. v. DynMcDermott Petroleum Opns. Co.*, 687 F.3d 671, 674-75 (5th Cir. 2012) (citing cases); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (holding that "incorporation of the AAA Rules. . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator"); *accord Brenco Enter., Inc. v. Bitesquad.com, LLC*, 297 F. Supp. 3d 608, 611-12 (E.D. Va. 2018) (Ellis, J.) ("the 'clear and unmistakable' standard is met because . . . the arbitration clause includes expansive language and incorporates [the AAA Rules] requiring that the arbitrator determine arbitrability"). Here too the incorporation of the AAA Employment Rules clearly and unmistakably delegates the gateway issues of arbitrability to the arbitrator. As a result, this Court should decline to rule on any challenges to the scope, validity, enforceability, or purported unconscionability, of the Arbitration Agreement.

---

[3] *See* https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf

### 3. Even if the Court Were to Decide the Remaining Gateway Issues, Plaintiff Must Still Be Compelled to Arbitrate Her Claims

Even if this Court were to consider the remaining gateway issues—which it should not—the outcome is the same: plaintiff must arbitrate the claims asserted in this action, and the Court should therefore compel arbitration.

It is beyond question that the wrongful discharge claim asserted here is within the scope of the Arbitration Agreement. The Arbitration Agreement expressly states that "Covered Claims" that are subject to arbitration include "any and all claims, disputes or controversies . . . that an Employee may have, now or in the future, against MinuteClinic, its parents, subsidiaries, successors or affiliates, owners or one of its employees or agents, ***arising out of or related to the Employee's employment with MinuteClinic or the termination of the Employee's employment***," including claims under specifically identified federal statutes "and other federal, ***state and local statutes, regulations and other legal authorities relating to employment***." *See* Schofield Decl. Ex. 1 at ¶ 2 (emphasis added). Thus, plaintiff's discrimination claim under the Virginia Conscience Clause falls squarely within the claims covered by the Agreement. As such, if the court decides these issues instead of delegating them to the arbitrator, plaintiff's claims are both arbitrable and within the scope of the parties' Agreement to arbitrate. The court should therefore compel plaintiff to arbitration.

## IV. CONCLUSION

For the foregoing reasons, because all claims and issues (including arbitrability) are subject to mandatory arbitration, defendants respectfully request that the court grant their motion to compel arbitration and dismiss the action without prejudice to plaintiff's right to refile the case in the AAA. *See Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of [9 U.S.C.] § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *accord de Jesus-Israel v. U-Haul Co. of Virginia*, 571 F. Supp. 3d 490, 498 (E.D. Va. 2021) ("Further, because all of the disputes raised by Plaintiff in her Complaint are subject to arbitration, the court finds that dismissal – as opposed to a stay of judicial proceedings – is appropriate"). In the alternative, defendants request that this action be stayed pending arbitration.

Dated: October 27, 2022

Respectfully submitted,

 /s/ Meredith L. Schramm-Strosser
Meredith L. Schramm-Strosser, Esquire
VA Bar No. 87984
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
Tel: (202) 842-3400
Fax: (202) 842-0011
Email: MSchramm-Strosser@littler.com

Richard M. DeAgazio, Esquire (*pro hac vice application pending*)
LITTLER MENDELSON, P.C.
One Newark Center
1085 Raymond Blvd., 8th Floor
Newark, NJ 07102
Tel: (973) 848-4733
Fax: (973) 556-1620
Email: RDeAgazio@littler.com

*Attorneys for Defendants*