**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **PAIGE CASEY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:22-cv-01127-PTG-WEF** |
| **MINUTE CLINIC DIAGNOSTIC OF VIRGINIA, LLC, et al.,** | |
| **Defendants.** | |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION**
**TO DISMISS COUNTS I AND II OF PLAINTIFF'S AMENDED COMPLAINT**

Defendants MinuteClinic Diagnostic of Virginia, LLC and CVS Health Corporation ("Defendants"), by and through undersigned counsel, hereby submit this Reply Brief in further support of their Motion to Dismiss Counts I and II of Plaintiff's Amended Verified Complaint.

## I.    ARGUMENT

### A.    Plaintiff's Title VII Claim Is Untimely and Should be Dismissed.

#### 1.    Plaintiff Failed to File Her EEOC Charge Within 300 Days of Being Notified of Her Impending Termination

There is no dispute that Plaintiff failed to timely file her Charge of Discrimination with the EEOC within 300 days. The 300-day limitations period under Title VII begins to run when the employee is **_notified_** of the adverse employment action, even if the effective date is later. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980); *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *Martin v. Southwestern Va. Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998) (applying *Ricks* and holding that plaintiff's discrimination claim "accrued on June 30, 1992, when Southwestern informed him that his discharge – though not to take effect until September 29, 1992

1

– was imminent"). Here, Plaintiff specifically pleads that she was notified on March 29, 2022 that her employment would be terminated effective April 1, 2022. (*See* Am. Compl. ¶ 48.) As such, the limitations period commenced on March 29, 2022 and expired 300 days later on January 23, 2023. However, Plaintiff did not file her EEOC Charge until January 25, 2023, two days late. (*See* Am. Compl. ¶ 9.) Plaintiff's EEOC Charge was therefore untimely.

In an effort to avoid dismissal of her Title VII claim, Plaintiff attempts to extend the statute of limitations by arguing that she had an "ongoing religious accommodation" and was permitted "to work with an accommodation in place up until her termination date." (Pl. Opp'n 3-4, 7.) Plaintiff thus argues that it was reasonable for her to conclude that April 1, 2022 – the effective date of her termination – "would be the operative date for commencing the statute of limitations." (*Id.* at 7.) Not only does this argument ignore the Supreme Court's holding in *Ricks*, but it is also belied by the allegations in Plaintiff's own Amended Complaint (and by common sense).

First, Plaintiff's Amended Complaint does not allege that she *actually worked* any shifts after she was notified of her termination on March 29, 2022. Thus, the argument – contained solely in Plaintiff's *brief*, and therefore not properly before the Court when evaluating the sufficiency of the allegations in the Amended Complaint for the purposes of a Rule 12(b)(6) motion – that this is an "ongoing-religious-accommodation" situation "under which she would be permitted to work without performing the objected-to-tasks" "up until her termination date" (Pl. Opp'n 3-4, 7) – is not supported by the pleaded allegations and is therefore inapposite.

Moreover, Plaintiff's argument ignores the entire premise and rule announced in *Ricks*, which held that the Title VII limitation period starts when the adverse decision is "communicated" to the employee, even if the effective date is later. *See Ricks*, 449 U.S. at 258. As such, it does not matter if Plaintiff continued to work after March 29, 2022, because the limitation period on her

discriminatory termination claim had already commenced on March 29, 2022, when she was notified that her employment was being terminated. (Am. Compl. ¶ 48 ("On March 29, 2022, CVS notified Mrs. Casey of her separation from the MinuteClinic, effective April 1, 2022").) Further, the limitation period on any failure to accommodate claim commenced even earlier – but certainly no later than March 29, 2022 – because Plaintiff admits that she was notified on March 4, 25, and 29, 2022 that she would no longer be given a religious accommodation (*see* Am. Compl. ¶¶ 42-47), and the statute of limitations is not extended by any additional work or accommodation requests. *See Martin*, 135 F.3d at 310 (defendant's denial of plaintiff's request for accommodation, made after plaintiff was informed of discharge, was "not a fresh act of discrimination," and company's "refusal to consider [plaintiff's] request for reasonable accommodation was merely a consequence of [company's] previous unequivocal decision to discharge [plaintiff] and thus does not provide [him] with a separate cause of action accruing" at later date).

In short, to whatever extent the alleged delay in enforcement of MinuteClinic's essential functions may have caused Plaintiff to believe that she was "receiving an ongoing religious accommodation," that supposed "belief" was clearly and unequivocally dispelled on March 29, 2022 when she was informed that her employment was being *terminated*. As such, the statute of limitations began to run when Plaintiff was notified of her termination on March 29, 2022, and there was no reasonable basis for Plaintiff to believe otherwise. Accordingly, Plaintiff's Title VII claim should be dismissed as untimely.

### 2.      Plaintiff Failed to Allege or Prove Any Facts Supporting Application of the "Equitable Tolling" Doctrine

Recognizing the untimeliness of her EEOC Charge, Plaintiff asks the Court to apply the "equitable tolling" doctrine to save her Title VII claim. There is, however, no basis for applying equitable tolling in this case.

Equitable tolling is a "narrow exception to statutes of limitations" that should only be applied in "rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *McClarigan v. Riverside Hosp., Inc.*, C.A. No. 4:21-cv-148, 2022 WL 3588031, at *5 (E.D. Va., Aug. 22, 2022). However, "[t]he decision to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Id.* (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *Stump v. Wilkie*, Case No. 7:20cv00369, 2021 WL 2044201, at *4 (W.D. Va. May 21, 2021), *aff'd*, 2022 WL 595651 (4th Cir. 2022). Equitable tolling applies "when (1) a defendant wrongfully prevents a plaintiff from asserting her claims, or (2) extraordinary circumstances beyond the plaintiff's control prevent her from filing on time." *McClarigan*, 2022 WL 3588031, at *5 (quoting *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 660-61 (4th Cir. 2018)). Because it is such an "extraordinary remedy," plaintiffs requesting equitable tolling "face a considerable burden to demonstrate that it applies." *Figueroa-Ibarry v. Rennick*, Case No. 1:20-cv-23, 2021 WL 954843, at *5 (E.D. Va., Mar. 12, 2021) (quoting *CVLR Perf. Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir.), *cert. denied*, 577 U.S. 1051 (2015)). Plaintiffs must show "that they have pursued their rights diligently." *McClarigan*, 2022 WL 3588031, at *5 (holding that "equitable tolling is warranted 'only if' a plaintiff shows *both* diligent pursuit and extraordinary circumstances") (quoting *Raplee v. United States*, 842 F.3d 328, 333 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 2274 (2017)).

Here, Plaintiff's Amended Complaint does not contain any allegations supporting equitable tolling. There are no allegations that Defendants prevented Plaintiff from asserting her claims, nor any allegations suggesting "extraordinary circumstances" beyond Plaintiff's control that prevented

her from filing her EEOC charge on time. Instead, Plaintiff alleges only that: (i) she filed a complaint of discrimination with the Virginia Attorney General's Office of Civil Rights ("OCR") on or about April 5, 2022 (Am. Compl. ¶ 7); (ii) she filed an EEOC Charge on January 25, 2023 (*id.* ¶ 9); and (iii) on February 6, 2023, the Virginia OCR advised her that the agency elected not to investigate her state complaint and deferred to the EEOC for investigation pursuant to a federal-state work-sharing agreement (*id.* ¶ 10). These are the only pleaded allegations relating to timeliness, but Plaintiff argues that equitable tolling should apply because she "diligently pursued her remedies" by filing a complaint with the Virginia OCR, which she "reasonably believed" was dual-filed with the EEOC pursuant to a work-sharing agreement.[1] (Pl. Opp'n 4 & n.1.)

However, Plaintiff's reliance on the Worksharing Agreement between the Virginia Office of Attorney General and the EEOC is misplaced. (*See* Worksharing Agreement Between Virginia Office of Attorney General, Division of Human Rights and the U.S. Equal Employment Opportunity Division for Fiscal Year 2021 ("Worksharing Agreement").)[2] Tellingly, Plaintiff does

---

[1] The "complaint" that Plaintiff filed with the Virginia OCR was a "Complaint Questionnaire" form submitted on April 5, 2022. *See* Complaint Questionnaire, attached hereto as <u>Exhibit A</u>. In ruling on a motion to dismiss, the court may, without converting the motion to one for summary judgment, "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Stump*, 2021 WL 2044201, at *3 (citation omitted); *Figueroa-Ibarry*, 2021 WL 954843, at *2. Here, the Complaint Questionnaire is integral to Plaintiff's Complaint – as it relates to her exhaustion of administrative remedies under Title VII – and there is no dispute as to its authenticity. *See McClarigan*, 2022 WL 3588031, at *3 (finding that plaintiff's EEOC records were properly considered in ruling on defendant's motion to dismiss on statute of limitations grounds, because the court's review of the documents was "necessary to determine if and how to adjudicate Plaintiff's claims"). As such, the Court should consider the Complaint Questionnaire in ruling on Defendants' Motion to Dismiss here.

[2] The Worksharing Agreement can be found on the Virginia OAG/OCR website at 2020-10-02_Work-sharing-Agreement_EEOC-Va-OAG-OCR_FY-2021.pdf (state.va.us). This Agreement was extended through fiscal year 2022 (October 1, 2021 to September 30, 2022) and thus was in effect during all times relevant to this motion. *See* KM_C368-20220711092839 (state.va.us). This Court can take judicial notice of these public records and thereby consider same on a Motion to Dismiss. *See Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

not cite any specific provision of the Worksharing Agreement obligating the Virginia OCR to dual-file a complaint with the EEOC. In fact, whereas the Agreement explicitly states that "[t]he EEOC's receipt of charges on the [Virginia OCR's] behalf will automatically initiate the proceedings of both the EEOC and the [Virginia OCR]," (*id.*, § II.A,) there is no similar language applicable in the converse situation, *i.e.*, when the <u>*Virginia OCR*</u> receives a complaint. Moreover, for complaints filed with the Virginia OCR that allege "an unlawful discriminatory practice under a federal statute," the Virginia Human Rights Act itself makes clear that the OCR does not automatically dual-file a complaint with the EEOC. Rather, the OCR "may investigate" such complaints and may "attempt to resolve it through conciliation," but if a complaint remains "unsolved," it "shall ***thereafter*** be referred to the federal agency with jurisdiction over the complaint." *See* Va. Code § 2.2-3902 (emphasis added). In short, Plaintiff was on notice that the Virginia OCR does not automatically dual-file complaints with the EEOC.

Further, even assuming *arguendo* that Plaintiff could reasonably presume that her complaint would be dual-filed with the EEOC, she became aware no later than January 10, 2023, that the complaint was *not* dual-filed. Although Plaintiff claims that she did not hear anything from the Virginia OCR until February 6, 2023, the OCR informed her counsel by email on January 10, 2023 that the complaint had <u>*not*</u> been dual-filed with the EEOC. (*See* 1/10/2023 email from Virginia OCR to Erica Steinmiller-Perdomo, Esq. ("As for OCR's dual-filing process, OCR will 'dual-file' a complaint with the EEOC upon case acceptance for investigation; thus, there is no 'automatic' dual-filing upon receipt of a complaint at OCR."), attached hereto as <u>Exhibit B</u>.).[3]

---

[3] This January 10, 2023 email is integral to the exhaustion of remedies issue and is thus necessary for the Court to decide the issues in this motion. *See McClarigan*, 2022 WL 3588031, at *4 (considering EEOC documents and emails in ruling on defendant's motion to dismiss that were "necessary to decide whether plaintiff exhausted her administrative remedies"). Further, there is no dispute regarding the authenticity of this email, which was produced by Plaintiff in discovery.

Notably, the Complaint Questionnaire itself made clear that the filing of same did not mean that the complaint would be accepted for investigation or dual-filed, and it stated that filing with the OCR "does not preclude you from filing with any other Federal or State agencies." (Ex. A at 1.) Similarly, directly above the signature line, Plaintiff acknowledged that the filing of the complaint "does not mean that the complaint will be accepted for investigation." (*Id.* at 4.) Thus, there was no indication on the form that the complaint would be dual-filed with the EEOC; in fact, every indication was to the contrary. It is also noteworthy that MinuteClinic was not notified of the filing of the Virginia OCR complaint until after the EEOC Charge was filed.[4]

In sum, Plaintiff was aware no later than January 10, 2023 that her complaint was not dual-filed with the EEOC and that it would only be dual-filed if and when the OCR accepted the case for investigation. At that point, Plaintiff still had 13 days to file an EEOC Charge before the 300-day limitations period expired on January 23, 2023. However, she delayed in filing her EEOC Charge until January 25, 2023, two days after the limitations period expired.[5] Thus, Plaintiff failed to diligently pursue her rights. Under these circumstances, Plaintiff is not entitled to equitable

---

[4] The cases cited by Plaintiff in support of her equitable tolling claim are inapposite. (*See* Pl. Opp'n at 5.) In two of them – *Brown v. Crowe*, 963 F.2d 895 (6th Cir. 1992) and *Granger v. Aaron's, Inc.*, 636 F.3d 708 (5th Cir. 2011) – the agencies misled the charging parties about the filing of the charges, giving rise to exceptional circumstances. In the other two cases – *Morris v. Waste Mgmt. of Virginia, Inc.*, 71 F. Supp. 2d 537 (E.D. Va. 1999) and *McIntyre-Handy v. W. Telemarketing Corp.*, 97 F. Supp. 2d 718 (E.D. Va. 2000), *aff'd*, 238 F.3d 413 (4th Cir. 2000) – the charges were filed *in the EEOC* under a work-sharing agreement that automatically dual-filed the charges in the state agency. Here, however, as noted above, the Worksharing Agreement did not mandate dual filing when a complaint is filed with the Virginia OCR, and thus the "presumption of regularity" does not apply. Finally, Plaintiff cannot get around the fact that she and her counsel were aware on January 10, 2023 – almost two weeks before the statute of limitations expired – that the Virginia complaint had not been dual-filed, and yet they still filed the EEOC Charge late. For this reason *alone* Plaintiff is not entitled to equitable tolling.

[5] If Plaintiff believed that her Virginia OCR complaint was dual-filed with the EEOC, as she alleges in her response brief, then there is no explanation as to why she filed an EEOC Charge on January 25, 2023 at all. In fact, it is obvious that Plaintiff filed the EEOC Charge specifically because she learned on January 10, 2023 that her Virginia OCR complaint was not dual-filed.

tolling, and her Title VII claim is time barred. *See Stump*, 2021 WL 2044201, at *4 ("equitable tolling is not appropriate in cases where the claimant failed to exercise due diligence in preserving his legal rights") (citation omitted); *McClarigan*, 2022 WL 3588031, at *7 (finding that plaintiff was not entitled to equitable tolling where she failed to demonstrate that extraordinary circumstances beyond her control prevented her from filing on time and failed to diligently pursue her claim).

### B.   Plaintiff's VHRA Claim Fails to State a Claim for Religious Discrimination

Plaintiff makes two arguments in response to Defendants' argument that the VHRA does not mandate religious accommodations or create a cause of action for failure to accommodate religion. Plaintiff's arguments, however, are without merit.

#### 1.   The VHRA's Specific Provisions Override Any Generalized Statements

Plaintiff cites to the VHRA's generalized statement that any conduct that violates any federal or state laws against religious discrimination is unlawful under the VHRA. Based on this, Plaintiff broadly argues that Title VII's religious accommodation duty is thereby automatically incorporated by reference into the VHRA. (Pl. Opp'n 7-8 (citing Va. Code § 2.2-3902) (hereinafter "Section 3902").) Plaintiff's interpretation of this general provision ignores the more specific contrary provisions in the VHRA, and it further ignores the VHRA's legislative history demonstrating that the Virginia General Assembly deliberately did not include a duty to accommodate religion in the statute.

There is no question that the text of the VHRA, like that of Title VII, permits disparate treatment claims based on an individual's religion. *See* Va. Code § 2.2-3905(B)(1). Thus, pursuant to Section 3902, disparate treatment based on religion that would violate Title VII necessarily violates the VHRA. *See* Va. Code § 2.2-3902. Indeed, where "Title VII and the VHRA use

substantially identical language," courts have interpreted the two consistently together. *See Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, Case No. 3:22-cv-00041, 2023 WL 4032875, at *6 n.4 (W.D. Va., June 15, 2023). But the VHRA and Title VII do *not* use substantially identical language when it comes to religious failure-to-accommodate claims. Title VII explicitly mandates that employers provide religious accommodations to employees unless doing so would create an undue hardship. *See* 42 U.S.C. § 2000e(j) (defining "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship"); 29 C.F.R. § 1605.2(b)(1) (confirming that duty to accommodate religion comes from this statutory definition). The VHRA, on the other hand, contains no mention of any duty to accommodate religion at all. *See* Va. Code § 2.2-3901 (defining "religion" as "any outward expression of religious faith, including adherence to religious dressing and grooming practices and the carrying or display of religious items or symbols," without reference to any duty of accommodation).

The VHRA's silence regarding religious accommodations is particularly noteworthy in light of the recent legislative history of the statute. Prior to 2020, the VHRA had none of its own employment discrimination prohibitions for employers with over 20 employees or causes of action other than wrongful termination, but rather just stated generally that it was "the policy of the Commonwealth to [s]afeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability, . . . in employment." *See* 2001 Virginia Session Laws, Ch. 844 (S.B. 1098, effective April 5, 2001); *see also Taylor v. CVS, Inc./Caremark*, Civil Action No. 3:16cv171, 2018 WL 3371043, at *2 & n.9-11 (E.D. Va., July 10, 2018)

(describing narrowness of VHRA claims prior to 2020 and dismissing Plaintiff's VHRA claim). Effective July 1, 2020, however, the VHRA was overhauled and several explicit provisions were added so that the statute, for the first time, applied to employers of all sizes and prohibited various forms of employment discrimination and adverse actions beyond wrongful termination.[6] *See* 2020 Virginia Session Laws, Chapters 1137-1140 (codified at Va. Code §§ 2.2-3901 to -3909). Notably, one of the amendments imposed a new duty on employers to accommodate employees for known limitations related to pregnancy, childbirth and related medical conditions, and created a private right of action based on the alleged failure to do so, unless the employer can demonstrate that the accommodation "would impose an undue hardship." *See* 2020 Virginia Session Laws, Chs. 1138, 1139 (S.B. 712, later codified at Va. Code § 2.2-3909); 2021 Virginia Session Laws, Ch. 196 (H.B. 2147). However, there were no other protected classes that were given the protections of an employer's express duty to accommodate.

The following year, however, the VHRA was amended again to impose new obligations for disability discrimination. *See* 2021 Virginia Session Laws, Ch. 12 (H.B. 1848). Specifically, a new section was added making it an "unlawful discriminatory practice" for an employer to "[r]efuse to make reasonable accommodation to the known physical and mental impairments of an otherwise qualified person with a disability, if necessary to assist such person in performing a particular job, unless the employer can demonstrate that the accommodation would impose an

---

[6] It was the April 2020 amendments that first added the prohibitions against discrimination, making it unlawful for an employer to "Fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions including lactation, age, status as a veteran, or national origin." *See* 2020 Virginia Session Laws, Ch. 1140.

undue hardship on the employer;" and creating a private right of action based on the alleged failure to make a disability-based accommodation. *See id.* (codified at Va. Code § 2.2-3905.1).

Thus, despite amending the VHRA extensively in 2020 and 2021 and adding explicit statutory duties to accommodate in two other protected categories – pregnancy/childbirth and disability – the Virginia General Assembly did *not* enact any other duty to provide reasonable accommodations for any other protected classes, including religion. In fact, the General Assembly amended the VHRA again in 2022 to add a new definition of "religion," but, unlike in Title VII, the legislature did not impose any duty or obligation in that definition for employers to accommodate an employee's religion. Instead, the General Assembly merely defined religion as including "any outward expression of religious faith, including adherence to religious dressing and grooming practices and the carrying or display of religious items or symbols." *See* 2022 Virginia Session Laws, Ch. 799 (H.B. 1063, codified at Va. Code § 2.2-3901(E)).

If Section 3902 were to be read as broadly as Plaintiff asserts, there would have been no need for the General Assembly to amend the VHRA to mandate accommodations for disabilities, as disability accommodations were already mandated by the federal Americans with Disabilities Act (ADA). *See* 42 U.S.C. § 12112(b)(5); 29 C.F.R. pt. 1630 app. § 1630.2(o). Nor would the General Assembly have needed to add a definition of "religion" to the VHRA, as the Title VII definition already encompassed outward expressions of religious faith, religious dress and grooming practices, and the display or religious items or symbols. *See* 42 U.S.C. § 2000e(j) ("religion" "includes all aspects of religious observance and practice, as well as belief…"). The General Assembly's perceived need to add these provisions to the VHRA is a strong indication that the legislature did not, and does not, view Section 3902 of the VHRA as "incorporating by reference" all prohibitions and mandates from all federal employment laws. In this regard, the

District Court's decision in *Crews v. Prince Charles Home Healthcare Agency, LLC*, Case No. 4:20cv00023, 2021 WL 201281, at *5 (W.D. Va., Jan. 20, 2021) is instructive. There, despite the fact that the plaintiff's Title VII sexual harassment and retaliation claims were held to be viable, the Court dismissed identical sexual harassment and retaliation claims under the VHRA, on the ground that such claims were not "recognized as actionable under the VHRA" at the time of plaintiff's employment (prior to the 2020 amendments to the VHRA). If Plaintiff's broad interpretation of Section 3902 were accurate, the VHRA claims in *Crews* would have automatically survived since the Title VII claims survived – but they did not.

Although, as Plaintiff notes, the VHRA is a remedial law to be liberally construed, see Va. Code § 2.2-3902, this general construction does not supersede the VHRA's specific anti-discrimination provisions, which contain no duty to accommodate an employee's religion. *See, e.g., Va. Mfrs. Ass'n v. Northam*, 74 Va. App. 1, 16, 866 S.E.2d 27, 34 (2021) ("When one statute speaks to a subject generally and another deals with an element of that subject specifically, the more specific statute is controlling." (quoting *Conger v. Barrett*, 280 Va. 627, 631, 702 S.E.2d 117 (2010))). This is especially so where, as here, the General Assembly added private rights of action in 2020 and 2021 for failure to accommodate employees because of pregnancy/childbirth and disability (*see* Va. Code §§ 2.2-3905.1 and -3909), thereby demonstrating that it knows how to create a "failure to accommodate" cause of action when it wants; but, when amending the definition of "religion" in 2022, explicitly did <u>not</u> add a right of action for failure to accommodate *religion* (Va. Code § 2.2-3901(E)). "Statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement . . . . When the General Assembly omits language from a statute that is present in surrounding statutes, [courts] find it to be an unambiguous manifestation of contrary

intention of the legislature." *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 384-5, 786 S.E.2d 144, 147 (2016) (citations omitted).

A ruling that the VHRA does not require religious accommodations would not be unprecedented. Indeed, courts in other jurisdictions have repeatedly held that state antidiscrimination laws do not mandate religious accommodation where those state laws differ from the language of Title VII. For instance, in *Aronson v. Olmsted Med. Ctr.*, Civil No. 22-1594 (D. Minn. Apr. 4, 2023), the Court held that a failure to accommodate religion claim was not cognizable under the Minnesota Human Rights Act (MHRA) because, in contrast to Title VII, the MHRA's text "does not include any language requiring an employer to provide any religious accommodation," and the legislature explicitly required accommodation for disabilities but chose not to do so for religion. *Id.* at \*3-5; *accord Shane v. Bio-Techne Corp.*, Civ. No. 22-3039, 2023 WL 3936638, at \*3-4 (D. Minn., June 9, 2023) (same); *Johnson v. Tyson Foods, Inc.*, NO. 21-cv-01161, 2023 WL 3901485, at \*3-4 (W.D. Tenn., June 8, 2023) (Tennessee Human Rights Act did not require religious accommodation because "there is no explicit language in the THRA imposing a duty to accommodate religious beliefs"); *see also Head v. Adams Farm Living, Inc.*, 242 N.C. App. 546, 775 S.E.2d 904, 909-10 (2015) (similar).

In sum, the Court should not read language into the VHRA that the General Assembly did not include, and Plaintiff's failure to accommodate religion claim should be dismissed.

### 2. Plaintiff's Amended Complaint Does Not Plausibly Allege a Claim for "Disparate Treatment" Religious Discrimination

Plaintiff next asserts that, even if a failure to accommodate religion claim is not viable, she has nonetheless adequately pleaded a claim for *disparate treatment* religious discrimination. This assertion is also without merit.[7]

---

[7] Although the point heading for Point II.B of Plaintiff's brief states that Plaintiff alleged a

To state a viable claim for relief under Rule 12(b)(6), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face" and "nudge [the] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). A plaintiff must allege "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Instead, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In assessing the adequacy of a complaint, a court cannot give credence to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Here, there are no facts – as opposed to mere bald conclusions – supporting a "disparate treatment" religious discrimination claim. All of the pertinent facts in the Amended Complaint relate to the prior religious accommodation being rescinded and Plaintiff's employment being terminated as a result of her refusal to perform an essential job function – provision of pregnancy prevention and contraceptive care services – that MinuteClinic announced on August 26, 2021 would apply to all employees. (*See* Am. Compl. ¶¶ 34, 37, 41-48, 54-56.) Indeed, in her own application of the *prima facie* case of disparate treatment, Plaintiff only argues that she satisfied the third element because "Defendants took adverse employment action against Mrs. Casey ***when they refused to accommodate her religious beliefs and ultimately fired her*** . . . ." (Pl. Opp'n 9-10 (emphasis added).) Thus, the alleged "disparate treatment" adverse action is simply the failure to accommodate her religion – no more, no less – and it is clear that Plaintiff is simply attempting to recast her failure to accommodate religion claim as one for disparate treatment.

---

"disparate *impact*" claim, (*see* Pl. Opp'n 8 (emphasis added)), the brief point itself only discusses a "disparate *treatment*" claim. We therefore assume the point heading was stated in error.

Indeed, nowhere in the Amended Complaint does Plaintiff allege that she was treated *differently* than other nurse practitioners on the basis of religion; rather, she merely states that her religious accommodation was rescinded. The Amended Complaint admits that the provision of contraceptive care/pregnancy prevention services was a function that MinuteClinic announced would apply to <u>all</u> nurse practitioners. (*See, e.g.,* Am. Compl. ¶ 37 (alleging that announcement was made during August 26, 2021 Town Hall meeting); *id.* ¶ 47 (alleging that Area Director Natalie Lickteig informed Plaintiff that "Reasonable Accommodations/Exceptions will not be accepted moving forward").) Although the Amended Complaint declares that Plaintiff was "terminated from her employment and discriminated against . . . because of her sincerely held religious beliefs," (*see* Am. Compl. ¶ 57), that is a mere legal conclusion devoid of any factual support. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In sum, a religious accommodation claim is not viable under the VHRA, and Plaintiff has not pled a plausible claim for disparate treatment religious discrimination. As such, Count II of the Amended Complaint should be dismissed.

## II.   CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' moving brief, Counts I and II of Plaintiff's Amended Complaint should be dismissed with prejudice.

DATED: June 21, 2023

Respectfully submitted,

 */s/ Meredith L. Schramm-Strosser*
Meredith L. Schramm-Strosser (Va. Bar No. 87984)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue NW, Suite 400
Washington, D.C. 20006
Phone: (202) 842-3400
Fax: (202) 842-0011
Email: MSchramm-Strosser@littler.com

Jeannie DeVeney, Esq.
LITTLER MENDELSON, P.C. (*pro hac vice*)

15

1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Phone: (816) 627-4405
Fax: (816) 817-1453
Email: JDeVeney@littler.com
Kim Rives Miers, Esq.
LITTLER MENDELSON, P.C., (*pro hac vice*)
100 Congress Avenue, Suite 1400
Austin, TX 78701
Phone: (512) 982-7253
Fax: (214) 880-0810
Email: KMiers@littler.com

Heather Pierce, Esq. (*pro hac vice*)
LITTLER MENDELSON, P.C.
One Financial Plaza, Suite 2205
Providence, RI 02903
Phone: (401) 824-2506
Fax: (401) 223-6867
Email: HPierce@littler.com

Richard M. DeAgazio, Esq. (*pro hac vice*)
LITTLER MENDELSON, P.C.
One Newark Center
1085 Raymond Blvd., 8th Floor
Newark, NJ 07102
Phone: (973) 848-4733
Fax: (973) 556-1620
Email: RDeAgazio@littler.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 21st day of June, 2023, a true and correct copy of the foregoing was filed via ECF, which caused a copy to be served upon Plaintiff's counsel of record as follows:

Kevin H. Theriot, Esq.
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (fax)
ktheriot@ADFlegal.org

Christopher P. Schandevel, Esq.
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
(571) 707-4656 (Fax)
cschandevel@ADFlegal.org

Denise M. Harle, Esq.
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., NE, D1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (fax)
dharle@ADFlegal.org

Erica Steinmiller-Perdomo
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 (fax)
esteinmiller@ADFlegal.org

*Attorneys for Plaintiff*

 */s/ Meredith L. Schramm-Strosser*
Meredith L. Schramm-Strosser (Va. Bar No. 87984)

# EXHIBIT A



# Office of the Attorney General - Office of Civil Rights

202 North Ninth Street · Richmond, VA 23219 · Office: (804) 225-2292 Fax: (804) 225-3294

## Complaint Questionnaire

*The information requested on this form will help us to help you. The information submitted will determine whether your complaint will be investigated. Filing with this office does not preclude you from filing with other Federal or State Agencies. **Please be specific in your responses and indicate the month, day, and year of the alleged discriminatory actions.***

### 1. Personal Information.

Name: <u>Paige</u>                    <u>Casey</u>
      *First*               *Middle*               *Last*

Street or Mailing Address: ███████

City/County: ███████   State: ███   Zip Code: ███████

Home Number: (    ) ____ - ____   Work Number: (    ) ____ - ____

Mobile/Cell Number: ███████   E-mail Address: ███████

Time to be contacted [Day(s) and Time(s)]: email preferred - currently experiencing cell interruption

Date of Birth: <u>08</u> / <u>†</u> / <u>1-96</u>   Age: <u>34</u>   Sex: <u>F</u>
       *Month*   *Day*   *Year*

Race/Ethnicity: ☐ African American/Black   ☐ American Indian   ☐ Asian/Pacific Islander
               ☐ Caucasian/White   ☐ Hispanic/Latinx   ☐ Other: _____

Person to contact if you cannot be reached: ███████

Street or Mailing Address: ███████

Telephone(s): (    ) ____ - ____ ; (    ) ____ - ____   Relationship to you: ███████

### 2. I believe that I was discriminated against by a(n): (check any that apply)

☑ Employer   ☐ Employment/Staffing Agency   ☐ Union   ☐ Real Estate Agent/Landlord

☐ Educational Institution   ☐ Place of Public Accommodation   ☐ Other: _____

If an Employer, how many employees does the company employ at all of its locations? <u>40+</u>   5/24/22
                                                               AR

| ATTENTION: This complaint must be filed with the Office within the time limits imposed by law. Answer all questions completely, and please attach additional pages if needed to complete your response. If you do not know the answer to a question, please answer by stating "not known." If a question is not applicable, write "N/A." When we receive this form, we will review it to determine whether we or another agency has jurisdiction and refer it appropriately. | – FOR OFFICIAL OCR USE ONLY –<br>**RECEIVED**<br><br>APR 0 5 2022<br><br>Office of the Attorney General<br>Office of Civil Rights<br><br>Va. OCR Form 01 (Revised 01/2021) |
| --- | --- |

**2.a. Organization contact information:** *If the organization is an employer, please provide the address where you actually worked. If you worked from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, please attach additional sheets.*

Name of Organization: **CVS**

Street or Mailing Address: **1 CVS Drive**

City: **Woonsocket**   State: **RI**   Zip Code: 22301

Phone: ( 800 ) 746 - 7287   Type of Business: **Retail Corporation**

Name of Owner/Manager/ Human Resources Director: ███████████

Job location if different from the above address: 415 E. Monroe Ave Alexandria Va 22301

**3. What is the reason (basis) for your claim of discrimination?** (*Example: If you feel you were treated worse that someone else because of your race, check the box next to Race. If you feel you were treated worse for several reasons, you should check each box that applies. If you complained about discrimination, participated in someone else's complaint, or filed a complaint or charge of discrimination and a negative action was threatened or taken by your employer, you should check the box next to Retaliation.*)

☐ Race     ☐ Color          ☐ National Origin    ☐ Disability      ☐ Military Status

☐ Sex      ☐ Sexual Orientation ☐ Gender Identity   ■ Religion       ☐ Age

☐ Pregnancy     ☐ Childbirth or related medical condition      ☐ Genetic Information*

☐ Marital Status    ☐ Retaliation

*If you checked Genetic Information, circle the type(s) of genetic information involved:
   i. Genetic testing     ii. Family medical history    iii. Genetic services (counseling, education, or testing).

*How was the genetic information obtained?  N/A

If you checked Color, National Origin, or Religion, please specify:  N/A

Other reason (basis) for discrimination (Explain):  N/A

If your complaint involves employment, please answer the following questions:

What date were you hired? 9 / 4 /2018    What was your job title at hire? NP

What was your job title at the time of the alleged discrimination? NP

What was the date you quit or were discharged? 4 / 1 /20 2022

Name and Title of your immediate supervisor? ███████████

**4. What happened to you that you believe was discriminatory?** *(For example in employment, denied promotion, terminated, etc.). Include the date of the alleged discrimination, a description of the actions taken, the name and title of each person who you believe discriminated against you. Please be specific and attach additional pages if needed. (Example: 01/01/2020 – Terminated by John Doe, Production Supervisor)*

Since the beginning of my employment with CVS health I had a reasonable accommodation in place due to my deeply held religious beliefs that I am unable to participate in any abortion. A reasonable accommodation had been provided to me to avoid prescription and administration of abortive causing agents. Now CVS requires to that I prescribe and administer hormonal contraception which can cause abortion. On 3/4 during a conversation with my direct supervisor, area 2 director and HR representative I was told that I would be fired at the end of the month if I could not align my practice to participate in the prescription and administration of abortion causing agents. Typically I work at a clinic that is frequently double staffed. On the occasion that I am single staffed, I am able to refer to a clinic 2-10 miles away or reschedule the patient for another day. I have had no complaints from patients that I have been unable to serve and have had no complaints when a 2nd provider is available to provide this service to patients who require it while I continue to provide services to other patients or do other necessary clinic tasks. My supervisor confirmed my work has been satisfactory to date. On 3/25, I reiterated my beliefs and desire to continue my employment. My manager reiterated that no accommodation is considered reasonable even when I am naturally double staffed based on business needs. I am unable to defer these services to another onsite provider and I will be surveilled to ensure that I do not avoid situations that compromise my deeply held religious beliefs. I reiterated my concerns in writing to the Area 2 director and was told that because I am unable to provide contraceptive services they will continue with the plan to terminate my employment Apr 1

**5. What reason(s) (if any) was given for the action taken against you?**

My religious convictions prohibiting prescribing and administering abortion-causing drugs make me ineligible to continue CVS employment.

I was denied opportunity to continue the accommodation that is reasonable and minimized disruption for 4 years.

**6. Describe any person who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, had the same attendance record, or the same performance. For each person identified, provide their name, race, sex age, national origin religion, or disability if known and it relates to your claim of discrimination. Use additional sheets if necessary.**

Employees opposed to murder of embryos are granted an accommodation to not recieve the COVID-19 vaccine.

**7. If you are claiming discrimination based on disability, please answer the following questions:**

☐ I have a disability ☐ I do not have a disability now but I did have one ☐ No disability but I am treated as if I am disabled

What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent you from doing anything? (Example: lifting, sleeping, breathing, walking, working, etc.)

N/A

Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability? N/A

Did you ask your employer for any changes or assistance to do your job because of your disability? N/A

If yes, when did you ask? N/A    Did you ask verbally or in writing? N/A

Who did you ask (name and job title)? N/A

Describe the assistance you requested?

How did your employer respond?

**8. Have you filed a complaint with any other state and/or federal agency?** ☐ Yes ■ No

If yes, identify the agency and date of filing:

**9. Have you sought help about this situation from an attorney, union, or other source?** ■ Yes ☐ No

If yes, please provide their name, address, and telephone number: N/A

I understand that by returning this completed questionnaire to your office, I have filed on official complaint with the Office of Civil Rights. However, this does not mean that the complaint will be accepted for investigation. If accepted for investigation, The Office will notify the person or organization that I have named in my complaint. I declare under penalty of perjury that the information provided herein is true and correct to the best of my knowledge.

_Signature_

3/30/2022

_Today's Date_

# EXHIBIT B

███████████

| | |
|---|---|
| **From:** | Wilson, Timothy L. <TWilson@oag.state.va.us> |
| **Sent:** | Tuesday, January 10, 2023 9:03 AM |
| **To:** | Erica Steinmiller-Perdomo |
| **Subject:** | RE: Attn: Tim Wilson |
| | |
| **Importance:** | High |

**\*EXTERNAL\***

Good morning Ms. Steinmiller-Perdomo,

The Office of the Attorney General, Office of Civil Rights ("OCR") investigates complaints of discrimination on the basis of race, color, religion, national origin, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical conditions, age, military status or disability in employment, places of public accommodation,  educational institutions and real estate transactions in Virginia.

OCR is in receipt of your client's complaint on April 5, 2022.  OCR reviews incoming complaints in the order that they are received.  Although, we are experiencing a backlog, we are doing our best to alleviate it as expeditiously as possible.  OCR will determine to either accept your complaint for investigation, refer it to another agency or dismiss it.  If necessary, OCR will contact you for any questions or concerns regarding your client's complaint.  At this time, your client's complaint has not been dismissed.

As for OCR's dual-filing process, OCR will "dual-file" a complaint with the EEOC upon case acceptance for investigation; thus, there is no "automatic" dual-filing upon receipt of a complaint at OCR. This procedure varies per local and state purifications that participate with ththe EEOC nationwide.

I hope this information helps and thank you for your patience.

Sincerely,

---

**From:** Erica Steinmiller-Perdomo <esteinmiller@adflegal.org>
**Sent:** Wednesday, January 4, 2023 7:05 PM
**To:** CivilRights <CivilRights@oag.state.va.us>
**Cc:** Kevin Theriot <ktheriot@adflegal.org>
**Subject:** RE: Attn: Tim Wilson

Hello Tim,

I wanted to bring this back to your attention after the holidays as I would like to get an update on the status of the discrimination investigation for my client, Paige Casey.

Please advise at your earliest convenience.

Casey 0000139

Happy New Year!
Erica



Erica Steinmiller-Perdomo
Legal Counsel
+1 202 393 8690 (Office)
+1-913-730-5184 (Direct Dial)
202-347-3622 (Fax)
esteinmiller@adflegal.org
ADFlegal.org

This e-mail message from Alliance Defending Freedom and any accompanying documents or embedded messages is intended for the named recipients only. Because Alliance Defending Freedom is a legal entity engaged in the practice of law, this communication contains information, which may include metadata, that is confidential, privileged, attorney work product, or otherwise protected from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. If you have received this message in error, please immediately notify the sender and permanently delete the message. PRIVILEGED AND CONFIDENTIAL - ATTORNEY-CLIENT COMMUNICATION/ATTORNEY WORK PRODUCT.

**From:** Erica Steinmiller-Perdomo
**Sent:** Wednesday, December 14, 2022 11:05 AM
**To:** CivilRights@oag.state.va.us
**Cc:** Kevin Theriot <ktheriot@adflegal.org>
**Subject:** Attn: Tim Wilson

Good morning Tim,

I'm reaching out for an update regarding the discrimination complaint filed by my client, Paige Casey (maiden name Paige Cantfil) in March of this year. My colleague Kevin Theriot, copied here, spoke with you in October and we were told that a decision would be made regarding the investigation of Mrs. Casey's complaint before the Thanksgiving holiday. I've left several voicemails with your office for an update on the investigation.

Has the Commission sent a letter to her employer, CVS MinuteClinic? Has a Compliance Officer been assigned to her case? Has Mrs. Casey's complaint been dual filed with EEOC pursuant to your workshare agreement?

I look forward to hearing from you at your earliest convenience.

Regards,
Erica Steinmiller-Perdomo

Casey 0000140